UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY KING,<br><br>  Plaintiff,<br><br>v.<br><br>KINGS COUNTY SHERIFF'S OFFICE, et al.,<br><br>  Defendants. | Case No. 1:20-cv-00943-BAK (BAM) (PC)<br><br>**ORDER GRANTING IN PART MOTION TO STRIKE ERRATA TO DEPOSITION OF DR. CHRISTOPHER FRENCH**<br><br>(Doc. 63) |

Currently before the Court is the Motion to Strike Errata to Deposition of Dr. Christopher French filed by Defendants Naphcare, Inc., Naeem Siddiqui, M.D., and Robyn Weston, NP (collectively "Defendants") on May 9, 2022. (Doc. 63.) Plaintiff Barry King filed an untimely opposition to the motion on June 7, 2022.[1] (Doc. 64.) Defendants replied on June 21, 2022. (Doc. 71.) The Court deemed the matter suitable for decision without oral argument and vacated the motion hearing. The matter was submitted on the record. (Doc. 72.) Having considered the parties' briefing, and for the reasons detailed below, Defendants' motion to strike will be granted, in part.

///

///

---

[1] Pursuant to Local Rule 230, effective March 1, 2022, Plaintiff's opposition to the granting of the motion was due no later than fourteen (14) days after the motion to strike was filed. *See* L.R. 230(c).

1

**I.     Background**

Plaintiff Barry King, a state prisoner proceeding with counsel, initiated this civil rights action pursuant to 42 U.S.C. § 1983 on July 7, 2020.  This case involves medical care Plaintiff received while a pretrial detainee housed at the Kings County Jail.  Plaintiff asserts that Defendants were deliberately indifferent to his need for medical care related to a jaw fracture he sustained prior to incarceration.  (*See generally* Doc. 1.)

On October 20, 2021, defense counsel Chad Couchot traveled to Eagan, Minnesota and deposed Plaintiff's expert witness, Dr. Christopher French, an oral surgeon.  (Doc. 63-2, Declaration of Chad C. Couchot ("Couchot Decl.") at ¶ 3.)  On November 28, 2021, defense counsel received an email from Plaintiff's counsel, which included a four-page attachment entitled "Corrections to Deposition of Dr. Christopher French" (hereinafter "errata").  (*Id.* at ¶ 5; Doc. 63-7, Ex. B to Couchot Decl.)  The document purports to make 42 changes to Dr. French's deposition transcript, with 32 of the changes listing the reason for the change as "Reason: 1," *i.e.*, "To clarify the record."  (Docs. 63-7; 63-6 at 20.)

Defendants now move to strike Dr. French's errata as improper and an abuse of the discovery process.  (Doc. 63-1.)

**II.    Discussion**

**A. Parties' Positions**

Defendants argue that Dr. French's errata should be stricken because it makes substantive changes to critical aspects of Dr. French's testimony, which are prohibited by Federal Rule of Civil Procedure 30(e).  (Doc. 63-1 at 4, 6.)  In particular, Defendants argue that Dr. French's proposed changes seek to delete or withdraw certain admissions or otherwise make substantive additions to his deposition testimony.  Defendants further argue that these are not corrective changes to clarify the record or to correct transcription errors.  Instead, Defendants contend that these proposed changes are an attempt to "substantively alter and contradict what was said under oath after the fact" in violation of Ninth Circuit precedent.  (*Id.* at 7.)  Defendants request that the Court strike the errata.

Plaintiff counters that Rule 30(e) permits transcript changes of both form and substance and that Dr. French's changes merely conform the deposition transcript either to Dr. French's expert report and/or to testimony found elsewhere in his deposition. Plaintiff characterizes the changes as "mostly not substantive or not material." (Doc. 64 at 5.) Plaintiff does not believe that striking the errata is appropriate. Rather, Plaintiff asserts that if Defendants were prejudiced by any of the changes, then the appropriate course would have been for Defendants to seek to re-depose Dr. French, which they did not do. Plaintiff also faults Defendants for failing to meet and confer in advance of filing the motion to strike, asserting that Defendants should be ordered to meet and confer to determine which changes, if any, require the Court's attention or, if the Court does not agree that meet and confer is necessary, then permit supplemental briefing.

Plaintiff submits that addressing each and every challenged correction is excessively burdensome and therefore Plaintiff responds to only five complaints made by Defendants about Dr. French's changes. Plaintiff argues that these changes are permissible as simply conforming mistaken or ambiguous testimony to the remainder of Dr. French's testimony or to his expert report. Plaintiff urges the Court to deny the motion because Defendants have not demonstrated that any of the changes are substantive, material, or prejudicial.

As a final matter, Plaintiff offers that if the Court finds the changes prejudicial, then the Court should order the parties to meet and confer and attempt to reach agreement on acceptable modifications of the changes or a withdrawal of the change. If the parties are unable to agree on modification or withdrawal, then the parties should be ordered to determine which, if any, issues require re-opening the deposition of Dr. French.

In reply, Defendants reiterate that the changes are substantive and therefore prohibited pursuant to Rule 30(e). Defendants argue that the fact they cited Dr. French's unaltered testimony in support of their motion for summary judgment demonstrates that the changes are substantive. (*See*, *e.g.*, Doc. 61-1 at 21, 27, 28[2]) Defendants also argue that they were not required to meet and confer prior to filing the instant motion, but they did. Defendants contend

---

[2] CM/ECF pagination.

3

1  that further meet and confer efforts would be futile and that requiring them to re-depose Dr.

2  French would be fundamentally unfair.  Defendants maintain that the proper remedy is to strike

3  the errata.

### B. Legal Standard

Under Federal Rule of Civil Procedure 30(e)(1), a deponent may, on request, review the transcript of his deposition and submit a signed statement listing "changes in form or substance . . . and the reasons for making them." Fed. R. Civ. P. 30(e)(1).  "While the language of [Rule] 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005).  The Ninth Circuit has made clear that "Rule 30(e) is to be used for corrective, and not contradictory, changes." *Id.* at 1226.  Indeed, under Rule 30(e) a deponent "may not 'alter what was said under oath ... A deposition is not a take home examination.'" *Fosselman v. Dimmer*, No. 1:12-cv-01302-DAD-SAB (PC), 2017 WL 1254685, at *16 (E.D. Cal. Feb. 17, 2017) (quoting *Garcia v. Pueblo Country Club*, 299 F3d 1233, 1242 n. 5 (10th Cir. 2022)).  As one court explained,

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992).

"In the Ninth Circuit, Rule 30(e) deposition errata are subject to the 'sham rule,' which precludes a party from creating 'an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Greer v. Pac. Gas & Elec. Co.*, No. 1:15-CV-01066-EPG, 2017 WL 2389567, at *4 (E.D. Cal. June 1, 2017) (quoting *Karpenski v. Am. Gen. Life Companies*, *LLC*, 999 F.Supp.2d 1218, 1224–25 (W.D. Wash. 2014)).  To determine "whether a deposition errata constitutes a sham, courts consider circumstances including the number of corrections, whether the corrections

4

1    fundamentally change the prior testimony, the impact of the corrections on the cases (including

2    whether they pertain to dispositive issues), the timing of the submission of corrections, and the

3    witness's qualifications to testify." *Greer*, 2017 WL 2389567, at *4 (quoting *Karpenski*, 999

4    F.Supp.2d at 1224–25). "Even where a court finds that errata are not shams, the court may still

5    strike portions that constitute contradictory rather than corrective changes." *Id.* (citation omitted).

6    **C. Analysis**

7    1. Unchallenged Changes

8    Dr. French's errata sheet consists of corrective and substantive changes. Of those, there

9    appear to be eleven unchallenged changes, including to correct transcription errors, *i.e.*, Reason 3.

10   As an example of a transcription error change, Dr. French's second entry on the errata sheet seeks

11   to change "67 hours" to "6-7 hours" at 19:7. (Doc. 63-7, Ex. B at 2.) Other proposed changes to

12   correct transcription errors include changing "symphyseal" to "parasymphyseal" at 86:13,

13   "Hypothetical" to "Incomplete Hypothetical" at 101:18, "scare" to "care" at 101:23, "having a

14   feeling" to "if she felt" at 104:9, and "e-mailed" to "mailed" at 114:18. (*Id.* at 3-4.) There are five

15   additional unchallenged changes, which do not involve transcription errors, found at entries 18:2,

16   21:25, 34:21, 59:22-24, and 123:8. (*Id.* at 2-5.) In the absence of a specific challenge, the eleven

17   corrective changes identified above appear proper and do not require further discussion.

18   2. Challenged Changes

19   <u>Contradictory Changes</u>

20   Defendants identify numerous substantive changes, including proposed changes that are

21   clear contradictions rather than corrections. For example, in response to whether Plaintiff's

22   counsel had given him any information not found in the records or in depositions, Dr. French

23   testified: "No." (Doc. 63-4, Ex. A, French Depo. at 48:16-19.) He now seeks to change his

24   response to "Yes, I was given the information regarding what Naphcare conveyed to the clinic,

25   and that the surgery was approved two days after the consult." (Doc. 63-7, Ex. B. at 2, 48:19.)

26   Another correction attempts to change "I don't know" to "I don't know" followed by a

27   presumptive answer: "I don't know, but from the record I was provided, it appears she created

28   two progress notes and looked at something called offsites more than once." (*Id.* at 4, 120:3.)

5

As another example, Dr. French testified that the oral surgery clinic was aware of the fact Plaintiff had a fractured jaw. He testified, "Based on the records I've seen and what I've reviewed and what I've been informed of, no, that was not the case, that – the oral surgery clinic was just told the patient had a fracture, and that was it." (Doc. 63-7, Ex. B at 2, 23:12-16.) On his errata sheet, Dr. French proposes changing this response to: "Based on the record, the ED talked to the oral surgery clinic, but it was not clear what facts were communicated." (*Id.*) Dr. French's change withdraws his purported statement that the oral surgery clinic was aware that Plaintiff had a fractured jaw. Additionally, Dr. French also testified in his deposition that the oral surgery clinic was aware of the fact Plaintiff had a fracture jaw, stating "The only thing I was told was that there was no information provided other than the patient had a fracture." (Doc. 63-7, Ex. B at 2, 24:1-3.) Dr. French now proposes to delete this testimony by "[r]emov[ing] the last sentence," and essentially withdrawing his statement. (*Id.*)

As Defendant points out, such changes have an impact on one of the main issues in this case; that is, whether it was reasonable for the jail's medical providers to defer to the outside oral surgery clinic regarding the timing of the care of Plaintiff's jaw fracture. (Doc. 63-1 at 7.)

Further, Dr. French's errata sheet attempts to change the following testimony:

> From: I'd have to review those notes a little further to look at their notes from prior to October 2018, prior to the visit with the oral surgeon. I apologize. The records are out of order in here.
>
> To: The Adventist CT scan shows there was displacement. If the Naphcare providers had done a physical exam as they were obligated to do once they knew there was a fracture, they would have found the displacement.

(Doc. 63-7, Ex. B at 3, 62:13-17.) Defendants disagree with Dr. French's opinion that the CT scan shows displacement. They therefore contend that with this addition, they have no way to cross-examine Dr. French regarding that opinion prior to trial. (Doc. 63-1 at 12.)

Plaintiff disagrees and contends that Dr. French "clarified ambiguous answers to conform to the rest of his testimony and expert report," arguing that Defendants were able to cross-examine Dr. French regarding his report and other testimony. (*See* Doc. 64 at 7-9.) However, whether other evidence supports the proposed changes is not the standard under Rule 30(e). *See*

6

1 *Azco Biotech Inc. v. Qiagen, N.V.*, No. 12-CV-2599-BEN DHB, 2015 WL 350567, at *4 (S.D. Cal. Jan. 23, 2015) (citation omitted).  The Court will therefore order that the contradictory changes be stricken.

Plaintiff's suggestion that striking the errata is not the proper remedy is unpersuasive. (Doc. 64 at 5.)  "Where a party uses Rule 30 to make contradictory changes to testimony made under oath, courts have found striking the errata to be the appropriate remedy." *Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, No. SA CV 18-01721-AB (FFMx), 2019 WL 8017810, at *2 (C.D. Cal. Nov. 27, 2019) (collecting cases).   Although Plaintiff asserts otherwise, the Ninth Circuit in *Hambleton* did not limit the striking of an errata to only those instances in which the changes were submitted too late and included no reasons for the changes.  (Doc. 64 at 5.) *Hambleton* does not limit its holding to the facts of the case and makes clear that Rule 30(e) must be used for corrective, not contradictory, changes.  397 F.3d at 1226; *see also Azco*, 2015 WL 350567, at *4 (finding plaintiffs' argument that *Hambleton* was distinguishable because the case involved late changes, changes without explanation, additions not already in the deposition, and new claims was unpersuasive).

        Addition of Substantive Information

In addition to contradictory changes, Dr. French also seeks to add new information to his original statements.  Although characterized as clarifications of the record, the statements do not clarify responses and instead add new facts or information to Dr. French's testimony.  For instance, Dr. French initially states, "No.  I think a provider still needs to read the x-ray themselves" and now adds, "Since the radiology report doesn't say the fracture is non-displaced, you can't assume the fracture is non-displaced." (Doc. 63-3, Ex. A, 33:23-24; 63-7, Ex. B at 2, 33:24.)  Dr French also initially testified, "Their obligation would be to call the jail and set up an appointment." He now adds: "if they received the form.  But I don't see this as the doctor's obligation, but as the scheduler's obligation." (Doc. 64-4, Ex. A, 64:9-10; 63-7, Ex. B at 3; 64:10.)

As another example of an addition, not clarification, when asked if there was any malalignment that Dr. French could glean from the records that Ms. Weston or Dr. Siddiqi should

have been aware of prior to the oral surgery consult, Dr. French responded: "If they noticed abnormality and displaced – she actually used the word 'displaced'– in October, then obviously, I would assume they had noticed that prior.  And if you had noticed that prior, then you would realize there was some displacement and abnormality of that area." (Doc. 64-4, Ex. A, 61:19-25.) Dr. French now adds:  "The Adventist CT scan shows there was displacement.  The Naphcare providers were obligated to do a thorough exam and this would have shown displacement." (Doc. 63-7, Ex. B, 61:25.)

As another example, Dr. French initially testified that it would not be reasonable for Dr. Siddiqi and Ms. Weston to assume that the OMFS clinic understood Plaintiff's condition based on the direct referral from the ED clinic.  In explaining why not, Dr. French stated: "My own personal view of a situation like that is I would want to know on my own, and I would probably call and ask to talk to the provider and actually have some provider-to-provider contact just because sometimes without that provider-to-provider discussion, things can get lost and things may not get communicated appropriately." (Doc. 63-4, Ex. A, 71:15-22.)  He now seeks to add: "The fact that the appointment was scheduled so far out should have raised a red flag that the oral surgery clinic did not have all the information." (Doc. 63-7, Ex. B at 3, 71:22.)  Other additions include entries at 53:1, 58:14, 75:9 and 96:5.  (*Id.* at 2-4.)

The Court finds that these "corrections," by way of additions, should be stricken.  The corrections add new information to Dr. French's testimony and unfairly avoid follow-up questions that could have been asked at the deposition. *See*, *e.g.*, *Moore v. Garnand*, No. CV 19-00290 TUC RM (LAB), 2021 WL 2981585, at *4 (D. Ariz. July 15, 2021) (striking corrections as violative of Rule 30(e) where corrections added new information or were "artful responses" that unfairly avoided any follow-up questions that could be asked at the deposition by opposing counsel).

<u>Further Substantive Additions</u>

As a final matter, Defendant seeks to strike numerous substantive additions, which include the following:

1. Page: 54 Line: 10
   From: Yes.
   To: Yes, there can be multiple treatment alternatives within the standard of care; however, not all alternative treatments are within the standard of care.

2. Page: 68 Line: 12-13
   From: gross instability.
   To: gross mobility, meaning visible to the naked eye.

3. Page: 70 Line: 17
   From: Yes.
   To: Yes, if the oral surgery clinic received the directive.

4. Page: 76 Line: 19
   From: No
   To: No, assuming they were told the fracture was comminuted.

5. Page: 86 Line: 1
   From: Yes.
   To: Yes. If something important was left out.

6. Page: 95 Line: 13
   From: Yes.
   To: Yes. At the time of the August 27 appointment, ASAP was the only appropriate plan since he was 45 days out from his injury.

7. Page: 117 Line: 6
   From: Yes.
   To: Yes. And failing to correct course when the plan was not being followed.

8. Page: 120 Line: 22
   From: I am guessing, yeah.
   To: I am guessing, yeah. But she had the opportunity to see if he was scheduled for surgery or not.

9. Page: 121 Line: 13
   From: So no.
   To: So, no Dr. Siddiqi did not place Mr. King at a high risk of death or grave bodily injury as I define it. But his actions did place Mr. King at a high risk of a serious detriment to his health.

10. Page: 121 Line: 18
    From: No. Again, I classify serious harm as either death or grave bodily injury.
    To: No. Again, I classify serious harm as either death or grave bodily injury. Ms. Weston did not place Mr. King at a high risk of death or grave bodily injury. But her actions did place Mr. King at a high risk of a serious detriment to his health.

9

11. Page: 121 Line: 23
    From: and discomfort.
    To: and discomfort, malunion and malocclusion.

12. Page: 122 Line: 2
    From: Correct.
    To: Correct. Not based on the records I saw.

13. Page: 122 Line: 6
    From: Correct.
    To: Correct. Not based on the records I saw.

14. Page: 122 Line: 10
    From: Correct. I saw no evidence of that.
    To: Correct. I saw no evidence of that in the records I saw.

15. Page: 128 Line: 4
    From: be displaced.
    To: be displaced. It's not only a question of displacement, it's also a question of stability. A fracture can be non-displaced at one time and then become displaced later if it's unstable. Without any records or physical exam showing that the fracture was non-displaced, it was not reasonable to assume that it was non-displaced. Without any records or physical exam showing that the fracture was stable, it was not reasonable to assume that it was stable; and would not become displaced, even if it started out nondisplaced.

16. Page: 148 Line: 2
    From: be.
    To: be. If the oral surgeon had explained to Dr. Siddiqi why it wasn't urgent, then Dr. Siddiqi could theoretically adjust his plan; but there are no records of this, and based on my understanding, there was no provider-to-provider conversation.

17. Page: 149 Line: 7
    From: days.
    To: days.  And Dr. Siddiqi and Ms. Weston had no conversations with the oral surgery clinic to discuss deviation from the discharge instructions timeline for follow-up of 3-5 days.

(Doc. 63-7 at 2-5.)

Numerous changes, including entries 70:17, 76:19, and 86:1, add qualifying, not clarifying statements to Dr. French's testimony.  Other of these changes add substantive information to Dr. French's testimony, altering his testimony in contravention of Rule 30(e). Egregious examples of these alterations include entries at 121:13, 121: 18 and 128:4, 148:2 and

149:7. Accordingly, the Court will order that the above-identified substantive additions be stricken.

Defendants also seek to strike a further addition regarding whether Plaintiff has any ongoing injury. Dr. French testified, "Based on the records that I've been given, he was at a point where he had the traumatic occlusion on the left side that was relieved with enameloplasty. There was some evidence of caries, or cavities, on a few teeth. And that would be the last I've seen. But I haven't seen anything recent, within – since – I believe it January of 2019 when he saw the orthodontist or shortly after that." (Doc. 63-5, Ex. A at 123:11-19.) Dr. French now seeks to alter this testimony to: "I did see records from March of 2019 where Mr. King still complained of a malocclusion and his teeth shifting." (Doc. 63-7, Ex. B. at 123:11-19.) The Court finds that this "correction" should be stricken given that it changes the prior testimony and adds new, more recent information, thereby avoiding any follow-up questions at deposition. *See Moore*, 2021 WL 2981585, at *4.

**III.  Conclusion and Order**

For the reasons stated, Defendants' Motion to Strike Errata to Deposition of Dr. Christopher French is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' motion to strike the eleven unchallenged corrective changes—entries 19:7, 86:13, 101:18, 101:23, 104:9, 114:18. 18:2, 21:25, 34:21, 59:22-24, and 123:8 [Doc. 63-7, Ex. B]—is denied;

2. Defendant's motion to strike the remaining changes in the errata is granted. These proposed changes are stricken from the errata as violative of Rule 30(e); and

3. The Court sets a Status Conference on **September 22, 2022, at 9:30 AM in Courtroom 8 (BAM) before the undersigned** to address the implications of the instant Order on the parties' pending motions for summary judgment (Docs. 61, 62). The parties shall meet and confer in advance of the conference and file a joint status

///

///

///

report at least one (1) full week prior to the conference. The joint status report should delineate each parties' position regarding the status of the motions for summary judgment, including the need, if any, for supplemental briefing.

IT IS SO ORDERED.

Dated:  **September 1, 2022**                    /s/ *Barbara A. McAuliffe*
                                                UNITED STATES MAGISTRATE JUDGE